UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROBERT JORDAN                              CIVIL ACTION NO. 12-cv-1999

VERSUS                                     JUDGE FOOTE

TIM KEITH                                  MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

Robert Jordan ("Petitioner") was charged with two counts of attempted second-degree murder. A DeSoto Parish judge convicted him of one count of attempted second-degree murder and one count of aggravated battery. The court imposed sentences of 20 years and 10 years, to run consecutively. Petitioner's convictions and sentences were affirmed on direct appeal. State v. Jordan, 2009 WL 2521216 (La. App. 2d Cir. 2009), writ denied, 31 So.3d 356 (La. 2010). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on three claims. For the reasons that follow, it is recommended that his petition be denied.

**Trial Testimony**

Virginia Woods testified that she and Petitioner dated for a few months, but the relationship had ended months before the incident that gave rise to this case. Despite the breakup, Petitioner, for some reason, had his paycheck from a Shreveport business mailed to Ms. Woods' home, and she called him to pick it up.

Ms. Woods' family and friends were having a barbecue when Petitioner arrived, and he hung around the gathering in the yard. Ms. Woods said that she primarily stayed inside and watched television. Late that night, as people were leaving, Ms. Woods began cleaning her house. She was sweeping when she saw Petitioner sitting in her den wearing shades. He asked what she was about to do. Woods said she was about to take a bath and wanted Petitioner to go. Petitioner, who had a history of violence with Woods, began hitting her with what Woods thought was his fist. Petitioner actually held a knife in his hand, which was concealed by a pack of cigarettes. Woods suffered two stab wounds to her chest and elbow.

Kizzie Scott, the other victim, was outside when she heard the disturbance. Woods testified that Ms. Scott tried to come to her aid, but the struggling pair were blocking the door. Scott eventually got inside, along with Ms. Woods' daughter, who pulled Petitioner outside. Woods said she heard Ms. Scott say that Petitioner had stabbed her, at which point she realized she had also been stabbed. Woods was treated at the scene by an EMT and taken to the hospital, where she stayed for two weeks. She testified that she had to learn how to walk and talk again during her recovery, which was not completed almost a year after the incident. Police officers and an EMT testified to corroborate the accounts of the injuries to the victims. Ms. Scott did not testify.

Petitioner took the stand and claimed self-defense against Ms. Woods, who had testified that she was 4' 10" and weighed between 98 and 100 pounds. Petitioner said that he had been at the house because he owed Ms. Woods money for a drug transaction, and he

said everyone at the party was using drugs. He allegedly told Ms. Woods that he was about to leave before the police arrived, due to the drug activity, when she smarted off at him and tried to hit him with her broom. Petitioner wrestled the broom from her, whereupon Ms. Woods got a knife from a table and swung it at Petitioner. He said he threw the knife in a sink, and then Ms. Scott came through the back door swinging at him with a pair of brass knuckles with a knife attached. Ms. Woods picked up another knife, and all three ended up swinging knives. Petitioner admitted that he stabbed Woods twice and that he also stabbed Kizzie Scott. He claimed, however, that it was self-defense and that he was also injured.

**Ineffective Assistance of Counsel**

    **A. Introduction; Burden**

Petitioner complains that his trial counsel was ineffective because he did not introduce a toxicology report for Ms. Woods and did not call witnesses who could have testified for the defense. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner raised these claims in his post-conviction application. The trial court issued a summary order that stated the claims were capable of resolution on the face of the documents, and the application had "no basis in fact or in law and the defendant is not entitled to the relief prayed for." Tr. 193. The state appellate court issued a one-sentence

order: "Upon the showing made, the exercise of this Court's supervisory jurisdiction is not warranted." Tr. 471. The Supreme Court of Louisiana denied writs without comment. Tr. 205.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### B. Toxicology Report

Petitioner testified at trial that Ms. Woods and the other people attending the party were using drugs. He said that a "toxicology report" from LSU Hospital would show her state of drug use at the time she was admitted to the hospital. Tr. 65-66. Ms. Woods had testified on cross-examination that she was not using drugs the day of the attack, and the

persons at the party had been drinking but not using drugs. Tr. 45. Petitioner claims that he asked his attorney many times to bring forth toxicology reports that would show that Ms. Woods was high on alcohol, cocaine, pills, and marijuana at the time.

The State responds that nothing in the record indicates that such a toxicology report ever existed. Brian Warren, an EMS worker, was asked on cross-examination if his agency checked "for toxicology reports or any kind of drug reports?" He said no, and added that he could not tell if Woods had been taking any drugs that evening. Tr. 77.

There is an indication in the record that the district attorney subpoenaed the medical records for Ms. Woods from the treatment she received at the LSU Hospital after she was stabbed. Tr. 17. The records would presumably have been made available to the defense as part of discovery and included a toxicology report if one existed. No such report has surfaced during the long history of this case.

Petitioner has suggested repeatedly that a toxicology report would prove that Ms. Woods was lying at trial. Even if he could prove that she lied on that point, it would not necessarily validate his self-defense theory. Moreover, review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). Petitioner must make out this claim on the record that was before the state court, and that record does not include a toxicology report or any indication that one existed and was available for use to support the defense. Given the

absence of supporting evidence, this court cannot say that the state court's adjudication of this claim was an objectively unreasonable application of Strickland.

### C. Other Witnesses

Petitioner complains that his attorney did not call Ms. Talmessia Richardson or any of his "other witnesses" who were willing to testify for Petitioner. Petitioner alleged in one of his post-conviction filings that his trial attorney was given the names of Niesha Robinson, Ladiedre Richardson, and (Talmessia) Breann Richardson as potential witnesses, but he did not interview them or call them at trial. Tr. 169-70. He asserted that the three women were Ms. Woods' "next door friends" and would testify that Woods lied when she said she and Petitioner were no longer seeing one another. Tr. 174. Petitioner also submitted an affidavit from Talmessia Breann Richardson, who stated that she was Ms. Woods next door neighbor, and that it was not true that Woods and Petitioner were no longer together at the time of the incident. Richardson stated that, on the night of the incident, Woods, Petitioner, and the other persons present were "doing drugs," which Woods continued to do after she got out of the hospital. Richardson stated that she "would have come to court and testify (sic) but the lawyer never summoned me." Tr. 178.

Many of the state court post-conviction rulings that come before this court in habeas cases are summary in nature. Affording the deference required by § 2254(d) is more difficult when the state court offers no explanation for its ruling, but "Section 2254(d) applies even when there has been a summary denial." Cullen, 131 S.Ct. at 1402. In such circumstances, the petitioner can satisfy the unreasonable application prong of the statute only by showing

that there was no reasonable basis for the state court's decision. Id. The federal court must determine what arguments or theories could have supported the state court's decision, and then ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in Strickland. Id. After assessing the record, the undersigned concludes that Petitioner has not met that high threshold.

The prejudice prong of Strickland requires a reasonable probability that the result in the case would have been different had counsel interviewed and called the other witnesses. To demonstrate prejudice in such a setting, the petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). Evans reversed a district court that had granted habeas relief on a similar Strickland claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense. See also Bruce v. Cockrell, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial.").

Petitioner has presented an affidavit from one of his proposed witnesses. She indicates that she was willing to testify at trial that Petitioner and Ms. Woods were still in a relationship at the time of the crime and were both using drugs. Such testimony would have been inconsistent with Ms. Woods' testimony, but not on such a critical point that it gives rise to a reasonable probability that Petitioner would have been acquitted or convicted of a

lesser crime if that testimony had been given at trial. Who was dating whom, and who might have been using what drugs or alcohol was of some relevance, but the critical issue was whether Petitioner intentionally stabbed the victims out of anger or irrationality or whether he did so in self-defense. Reasonable persons might consider it relevant whether a victim was intoxicated and in a relationship with the attacker, but reasonable minds could also determine that, based on the testimony at trial, such facts could not sway the verdict. There are, therefore, arguments or theories that could have reasonably supported the state court's rejection of the Strickland claim, so habeas relief is not available.

**Confrontation Clause Claim**

Kizzie Scott, the second victim, did not testify at trial. Ms. Woods testified that Petitioner attacked Ms. Scott, and emergency responders testified about Ms. Scott's wounds. Petitioner himself was asked, "And then you stabbed Kizzie Scott also?" He responded, "I don't deny that." He gave the same answer when he was asked if he stabbed Scott in the abdomen and if he stabbed her in the arm. Tr. 87-88. Petitioner complains that it violated the Confrontation Clause that he was not allowed to question Scott at trial. He points to evidence that she had a fairly extensive criminal history, was featured in the local newspaper as felon of the week, and was a fugitive at the time of trial. Petitioner suggests that these facts could have been used to impeach Scott had she testified.

Petitioner cites Crawford v. Washington, 124 S.Ct. 1354 (2004), which held that out-of-court statements by a witness that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-

examine the witness, regardless of whether such statements might be deemed reliable. Neither Crawford nor any other case has held that habeas relief is available if the victim is unavailable and none of her statements are submitted as evidence. The Confrontation Clause protects the ability to cross-examine a witness who has testified against a defendant, but it does not guarantee the right to cross-examine a witness who has not offered any testimony or statements harmful to the defendant.

Petitioner has not identified any out-of-court statements by Ms. Scott that he believes were testimonial in nature and that triggered Crawford, and the State has represented that it did not rely on any statements of Ms. Scott. The record shows, however, that when Detective Shane Adams was testifying, the prosecutor asked him what Ms. Scott told him. Adams replied that Scott said she was standing outside when she heard a disturbance inside. She entered the house. According to Adams, "She said that she observed [Petitioner] hitting Ms. Woods and at that time she tried to intervene and assist, and that's when she got stabbed." Tr. 56-57.

The out-of-court statements by Ms. Scott, as testified to by Detective Adams, potentially violated Crawford, and Ms. Scott was not available for confrontation and cross-examination regarding her statements. Confrontation Clause violations are, however, subject to a harmless error analysis. Bullcoming v. New Mexico, 131 S.Ct. 2705, 2719 n. 11 (2011); U.S. v. Harper, 527 F.3d 396, 400-01 n. 3 (5th Cir. 2008). A federal court may grant habeas relief on account of constitutional error in a state court criminal trial only if the error had a substantial and injurious effect or influence in determining the jury's verdict.

Horn v. Quarterman, 508 F.3d 306, 322 n. 24 (5th Cir. 2007). Given the significant other evidence that Petitioner stabbed Ms. Scott, and particularly his clear admission that he did so, any Confrontation Clause violation was harmless error. Habeas relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of July, 2015.

Mark L. Hornsby
U.S. Magistrate Judge